UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL G. HAYES,<br><br>    Plaintiff,<br><br>    v.<br><br>PATRICK DONAHOE,<br><br>    Defendant. | Case No. 12-cv-02964-WHO<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**<br><br>Re: Dkt. No. 34 |

**INTRODUCTION**

*Pro se* plaintiff Michael G. Hayes alleges employment discrimination in violation of Title VII of the Civil Rights Act against defendant United States Postal Service.[1] He filed a second amended complaint ("SAC") on October 24, 2012. Dkt. No. 4. The Postal Service has moved for summary judgment. Dkt. No. 34. For the reasons stated below, the Postal Service's motion is GRANTED IN PART and DENIED IN PART.

**BACKGROUND**

Mr. Hayes, who is African American, began working for the Postal Service in 1996 as a mail processing equipment mechanic. Falk Decl. Ex. A ("Hayes Depo.") at 37:3-10 [Dkt. No. 34-2]. He has worked in his current position as a "Level 10" electronic technician since 2001. Hayes Decl. ¶ 1 [Dkt. No. 37].

On February 24, 2010, the Postal Service issued a letter to Mr. Hayes and six other electronic technicians in San Francisco, stating that they would be "excessed" (reassigned to positions in other locations due to overstaffing) as of April 25, 2010. Falk Decl. Ex. A at 33

---

[1] Mr. Hayes names Patrick R. Donahoe, Postmaster General of the United States Postal Service, as defendant.

1    ("Feb. 24th Reassignment Letter") [Dkt. No. 34-2, page 33]. Of the other six employees being

2    excessed, five were Asian-American and one was Caucasian. Chun Decl. ¶ 5 [Dkt. No. 34-4]. In

3    compliance with the collective bargaining agreement governing their employment, the employees

4    would be reassigned to new facilities based on their preferences and seniority. Feb. 24th

5    Reassignment Letter.

6          On September 9, 2010, the Postal Service mailed Mr. Hayes a letter identifying seven

7    positions to which he could relocate, and requested that Mr. Hayes rank his placement preferences

8    on an attached form. Falk Decl. Ex. A at 34 ("Sept. 9th Position Preference Letter") [Dkt. No. 34-

9    2, page 34]; Falk Decl. Ex. A at 5 [Dkt. No. 34-2, page 51]. The attached form identified only

10   "Level 10" positions, which were located in Salinas, Petaluma, and San Jose.

11         Mr. Hayes maintains two addresses on file with the Postal Service, a "Residence Address"

12   in San Francisco and a "Mailing Address" in Los Angeles. Opp. Ex. F [Dkt. No. 36, page 40].

13   The Postal Service mailed the Sept. 9th Position Preference Letter and preference form to Mr.

14   Hayes's mailing address in Los Angeles, not to his residence address in San Francisco. The letter

15   and form arrived at Mr. Hayes's Los Angeles address on September 11, 2010. Falk Decl. Ex. A at

16   35, 51. Mr. Hayes saw or was notified of the letter within a week of its arrival in Los Angeles.

17   Hayes Depo. 62:1-4. The letter stated:

18   > You must return the form to Jose Nuno, Complement Coordinator
19   > … by COB: Friday September 24, 2010. If you fail to return your
>    selections by the date listed, you will be placed in one of the
20   > remaining withheld assignments.

21         Two supervisors each hand delivered a copy of the same letter, along with a second, longer

22   list of available positions, to Mr. Hayes on September 23, 2010, one day before the reassignment

23   preferences were due. Hayes Depo. at 66:21-68:2. The second list contained the same Level 10

24   positions as the first list, but also contained positions at Levels 4, 7, and 9 in other geographic

25   areas.[2] The longer list included 11 positions around Los Angeles, all of which were Level 4

United States District Court
Northern District of California

---

[2] During oral argument, counsel for the Postal Service suggested that the Postal Service mailed the longer list to Mr. Hayes on September 9th, 2010. But there is no evidence before the Court that Mr. Hayes was mailed the longer list on September 9th or at any other time. Mr. Hayes denies that he was mailed the longer list at any time.

"Laborer Custodian" positions. Plaintiff Exhibit B [Dkt. No. 36, pages 22-25].

Mr. Hayes did not return the form identifying his reassignment preferences by the September 24th deadline. He states that he "just didn't know what was best at that time in [his] career" and he "needed to talk to the union totally about [his] options." Hayes Depo. at 69:20-21, 76:15-16. The six other affected Level 10 electronic technician employees submitted their preferences on time. Cy Yee (Asian American), Jason Seto (Asian American), and Yuchai Chen (Asian American) submitted their preferences on the same shorter list originally given to Mr. Hayes, which only listed the available Level 10 positions. Henry Cacho (Asian American), Bill Lee (Asian American) and Duane Hasselbach (Caucasian) submitted their preferences on longer lists which included positions at Level 10 and other lower levels. The record does not reflect when they received the longer lists, but Mr. Cacho submitted his preferences on September 14, 2010 and Mr. Lee on September 21, 2010. The record does not indicate when Mr. Hasselbach returned his list. None of the employees indicated a preference for any of the positions below Level 10 identified on the longer list of available positions.

Mr. Hayes states that he was interested in moving back to Los Angeles and would have considered taking a Level 4 position to do so. Hayes Depo. at 75:5-76:4. He previously requested reassignment to Los Angeles on February 15, 2010, several months before the Postal Service notified him of the involuntary reassignment. Opp. Ex. G.

On October 18, 2010, Mr. Hayes was notified that he would be reassigned to a Postal Service facility in Salinas, California, beginning October 25, 2010. Hayes Decl. ¶ 12; Hayes Depo. at 83-85. The reassignments for the affected electronic technicians were as follows:

| **Seniority** | **Employee** | **Reassignment** | **Reporting Date** |
|---|---|---|---|
| Rank 53 | Cacho, Henry | San Jose | Oct. 25[3] |
| Rank 75 | Hasselbach, Duane | San Jose | Oct. 25 |
| Rank 76 | Lee, Bill | Petaluma | Oct. 25[4] |
| Rank 77 | Hayes, Michael | Salinas | Oct. 25 |

---

[3] Henry Cacho was not originally selected to be excessed, but used his seniority to select reassignment in lieu of an employee junior to him. Nuno Decl. ¶ 6.

[4] Bill Lee's and Jason Seto's reporting dates were later changed to December 6, 2010. Nuno Decl. ¶ 7, Nuno Decl. Ex. E at 6, 8.

3

| | | | |
|---|---|---|---|
| Rank 78 | Chen, Yuchai | Petaluma | Oct. 25 |
| Rank 79 | Yee, Cy | Petaluma | Oct. 24 |
| Rank 80 | Seto, Jason | Salinas | Dec. 6 |

Nuno Decl. Ex. E; Chun Decl. Ex. B at 31. Only Mr. Cacho and Mr. Hasselbach were awarded their first choices. Nuno Decl. Exs. D, E.

The September 9th Position Preference Letter mailed to Mr. Hayes stated, "If you are involuntarily placed in a position that adds 50 miles to your current commute, you will be entitled to receive relocation/moving benefits." Mr. Hayes was not awarded relocation or moving benefits even though he was reassigned from San Francisco, where he resided, to Salinas, which is more than 50 miles away.

During his deposition, Mr. Hayes could not identify any statement or action made by a Postal Service supervisor that evidenced racial animus or discriminatory motive. Hayes Depo. at 84:23-98:23. When asked whether he had evidence of someone discriminating against him because of race, Mr. Hayes stated, "upper management knew me personally because I had a grievance with them, and they took a personal interest in me with this grievance." Hayes Depo. at 98:8-10.

In 2011, the Postal Service closed the Salinas location and reassigned Mr. Hayes to San Jose, where he currently works. Hayes Depo. at 40:11-17.

**LEGAL STANDARD**

Summary judgment is proper where the pleadings, discovery, and affidavits show that there is "no genuine dispute as to any material fact and [that] the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Material facts are those which may affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *Id.* The moving party for summary judgment bears the initial burden of identifying those portions of the record that demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Where the nonmoving party will have the burden of proof at trial, "the burden on the moving party may be discharged by 'showing'— that is, pointing out to the district court—that there is an absence of evidence to support the

4

nonmoving party's case." *Id.* at 325.

If the moving party meets this burden, the nonmoving party must identify, with reasonable particularity, evidence of specific facts that present a genuine issue for trail. *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989) (citing *Celotex*, 477 U.S. at 322) (internal quotation marks omitted). The evidence of these facts cannot be mere allegations found in the pleadings; the evidence should be found in affidavits, depositions, documents, declarations, or other materials. Fed. R. Civ. P. 56(c)(1); *Gasaway v. Nw. Mut. Life Ins. Co.*, 26 F.3d 957, 959-60 (9th Cir. 1994). The district court is not required "to scour the record in search of a genuine issue of triable fact." *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996) (internal quotation marks omitted).

The court should "draw all justifiable inferences in favor of the nonmoving party, including questions of credibility and of the weight to be accorded particular evidence." *Masson v. New Yorker Magazine*, 501 U.S. 496, 520 (1991). If the nonmoving party fails to identify genuine issues of material fact, "the moving party is entitled to judgment as a matter of law." *Celotex Corp.*, 477 U.S. at 323 (internal quotations omitted).

## DISCUSSION

### A. Mr. Hayes's allegations

Mr. Hayes alleges employment discrimination based on race or color. SAC at 1. He does not appear to allege that the excessing in itself was employment discrimination, but he complains of several actions related to the excessing. Reading the SAC liberally in light of Mr. Hayes's *pro se* status, Mr. Hayes alleges the following adverse employment actions: (1) the seniority list used during the involuntary reassignment was falsified; (2) the Postal Service gave Mr. Hayes only seven days' advance notice of his relocation, while other reassigned employees received several weeks; (3) the Postal Service did not give Mr. Hayes "administration leave" to secure housing that it gave to other reassigned employees; (4) the Postal Service provided Mr. Hayes only a partial list of available positions until one day before his preferences were due, while other affected employees received the complete list, which included available positions in Los Angeles, earlier; and (5) the Postal Service withheld "available relocation money."

Mr. Hayes seeks to "be made whole, be reassigned to the Los Angeles District as an

5

electronic technician and pray the Court for exemplary damages as the Court sees just and proper." SAC at 6 (Demand for Relief).

**B. Establishing employment discrimination in violation of Title VII**

Under Title VII of the Civil Rights Act, it is illegal for an employer to "discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race [or] color . . . ." 42 U.S.C. § 2000e-2(a)(1). An employee can prove that an employer has violated Title VII by demonstrating that the employee suffered disparate treatment. *Sischo–Nownejad v. Merced Community College Dist.,* 934 F.2d 1104, 1109 (9th Cir. 1991).

If the employee's claim relies on circumstantial evidence rather than direct evidence, he must first present a prima facie case. In adverse employment cases, a plaintiff can present a prima facie case "by showing that (1) he is a member of a protected class; (2) he was qualified for his position; (3) he experienced an adverse employment action; and (4) similarly situated individuals outside his protected class were treated more favorably, or other circumstances surrounding the adverse employment action give rise to an inference of discrimination." *Peterson v. Hewlett-Packard Co.*, 358 F.3d 599, 603 (9th Cir. 2004). "The amount of evidence that must be produced in order to establish a prima facie case is 'very little.'" *Sischo–Nownejad v. Merced Community College Dist.*, 934 F.2d 1104, 1111 (9th Cir. 1991) (superseded by statute on other grounds as stated in *Dominguez-Curry v. Nevada Transp. Dep't*, 424 F.3d 1027, 1041 (9th Cir. 2005); *Gordon v. The Bay Area Air Quality Mgmt. Dist.*, C08-3630 BZ, 2010 WL 147953 (N.D. Cal. Jan. 12, 2010)).

If the plaintiff presents a prima facie case, there is a rebuttable presumption that the employer engaged in intentional discrimination and the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for the adverse employment action. *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 253-54 (1981). "The defendant [has] the burden of producing an explanation to rebut the prima facie case—*i.e.,* the burden of producing evidence that the adverse employment actions were taken for a legitimate, nondiscriminatory reason." *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 506-07 (1993) (internal quotation marks omitted). If

6

1    the employer articulates such a reason, the burden shifts back to the plaintiff to raise a genuine

2    factual issue as to whether the employer's stated reason is pretextual. *Washington v. Garrett,* 10

3    F.3d 1421, 1432 (9th Cir. 1993). "If [the] plaintiff succeeds in raising a genuine factual issue

4    regarding the authenticity of the employer's stated motive, summary judgment is inappropriate,

5    because it is for the trier of fact to decide which story is to be believed." *Id*.

### C. Analysis of Mr. Hayes's Allegations

The Court addresses Mr. Hayes's factual allegations separately to determine whether he has presented a prima facie case of employment discrimination in violation of Title VII and, if so, whether the Postal Service has rebutted it. Only two elements of Mr. Hayes's prima facie case are at issue: (1) whether a similarly situated individual outside of Mr. Hayes's protected class was treated more favorably, and (2) whether Mr. Hayes suffered an adverse employment action.[5] The Postal Service asserts that Mr. Hayes "cannot establish that similarly situated employees outside of his protected class were treated more favorably." Mot. at 11. The Postal Service does not address whether the alleged actions constitute adverse employment actions.

#### 1. Falsified Seniority List

For purposes of the reassignment, the Postal Service determined that Mr. Hayes was the fourth most junior employee in his classification—number 77 out of 80. Chun Decl. at 31 [Dkt. No. 34-6]. Mr. Hayes alleges that the seniority list was falsified. SAC at 3.

According to the collective bargaining agreement governing Mr. Hayes's employment, his seniority is calculated not by his original hire, but from the time he was assigned to his current "craft or occupational group." Falk Ex. B, Article 12.5.B.6 [Dkt. No. 34-3]. Mr. Hayes has worked in his current position as a "Level 10" electronic technician since 2001.

Mr. Hayes has not provided any evidence to support his claim that the seniority list was

---

[5] The Postal Service does not contest, and the Court agrees, that Hayes is a member of a protected class. *See Aragon v. Republic Silver State Disposal Inc.*, 292 F.3d 654, 659 (9th Cir. 2002) ("It is well-established that Title VII applies to any racial group, whether minority or majority"). It is also uncontested that Hayes was qualified for his existing position and the available reassignment positions.

falsified, and has therefore established neither that he was subject to an adverse employment action, nor that others were treated preferentially. This claim thus fails.

### 2. The Postal Service Gave Mr. Hayes Only Seven Days' Advance Notice of his Relocation, While Others Received Several Weeks

Mr. Hayes alleges that the Postal Service gave other employees in his position more time to prepare for the move than it gave him. Compl. at 4; Opp. at 3. The Postal Service states that it mailed Mr. Hayes's notification of reassignment on October 14, 2010, giving Mr. Hayes 11 days' notice. Falk Decl. at 54. Mr. Hayes states that the letter was never mailed and that the notice was hand-delivered to him on October 18, 2010, giving him seven days' notice. Hayes Decl. ¶ 12. While it may have been inconvenient for Mr. Hayes to relocate in seven days, relocation on short notice does not by itself constitute an adverse employment action. *See, e.g., Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 761 (1998) (an adverse employment action "constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits"). Accordingly, this claim fails.

### 3. The Postal Service Did Not Give Mr. Hayes "Administration Leave" to Secure Housing That it Gave to Other Affected Employees

Mr. Hayes alleges that other employees in his position were granted "administration leave" to find temporary housing, while he was not. Compl. at 4; Opp. at 3. There is no evidence, however, that any employee received leave to prepare for the relocation. Mr. Hayes has therefore not shown that similarly situated employees were treated more favorably and the claim fails.

### 4. Other Employees Received the Complete List of Positions Before Mr. Hayes

Mr. Hayes alleges that he received the complete list of available positions later than the other reassigned employees. He alleges that he did not receive the longer list of assignments until September 23, but he concedes that he did eventually receive the complete list and that he never returned either the original or the longer list.

The evidence shows that at least one other affected employee, Mr. Lee, received the longer list before the date Mr. Hayes states that he received it. The record does not reflect when Mr. Lee

received the longer list, but he submitted his preferences on September 21, 2013, on the longer list. Nuno Decl. Ex. D; Chun Decl. ¶ 5. Since Mr. Hayes alleges that he did not receive the complete list until September 23, 2012, Mr. Lee received the longer list at least two days before Mr. Hayes. Mr. Lee is thus a similarly situated individual, outside of Mr. Hayes's protected class (Mr. Lee is Asian-American), who was treated more favorably.

However, receiving the complete list of available reassignments two days later than another individual does not, by itself, constitute an adverse employment action. *See, e.g., Burlington Indus., Inc*, 524 U.S. at 761. Moreover, as similarly situated employees outside of Mr. Hayes's protected class were also subject to the reassignment, including to Salinas, Mr. Hayes's lateral reassignment to Salinas, standing alone, does not support his employment discrimination claim.

In addition, it is undisputed that there were no Level 10 positions available in Los Angeles at the time of excessing. Consequently, Mr. Hayes's assertion at oral argument that the Postal Service informed him at some time prior to the excessing that it would consider reassigning him to a Level 10 position in Los Angeles is not relevant to Mr. Hayes's claims.

### 5. The Postal Service Did Not Provide Mr. Hayes Relocation Money

Per the September 9th Position Preference Letter, Mr. Hayes was entitled to relocation benefits when he was reassigned to Salinas from San Francisco because he was "involuntarily placed in a position that adds 50 miles to [his] current commute." The Postal Service did not pay Mr. Hayes relocation benefits. Mr. Hayes alleges that other employees were awarded relocation benefits.

According to the Human Resources Generalist Principal at the Postal Service facility in San Francisco, Mr. Hayes was not eligible for relocation benefits "because his address of record was in Los Angeles." Croteau Decl. [Dkt. No. 34-7] ¶ 4. The Postal Service does not explain why it used Mr. Hayes's mailing address in Los Angeles to calculate his commute to Salinas, rather than his residential address in San Francisco. The Postal Service does not dispute that both addresses were on file during the relevant time period.

In addition, the Postal Service maintained a list of the reassigned employees which "noted

9

whether their *residence* address was within or outside 50 miles of their new assignment." *Id*. at ¶ 2 (emphasis added). The list states that Mr. Hayes's residence address was "within 50 miles." *Id*. Ex. A [Dkt. No. 34-8]. The Postal Service does not state how it determined that Mr. Hayes's residence address was "within" 50 miles of his new assignment, Salinas. Both San Francisco and Los Angeles are more than 50 miles from Salinas. The list identifies Jason Seto, who was also transferred to Salinas, as being "outside 50 miles." *Id*. It thus appears to the Court that Mr. Seto, who is Asian-American, was awarded relocation benefits.

For purposes of presenting a prima facie case, the Postal Service's failure to provide Mr. Hayes with relocation benefits constitutes an adverse employment action, particularly in light of the allegation that Mr. Hayes received the longer list of positions later than other employees. *See, e.g., Breneisen v. Motorola, Inc.*, 512 F.3d 972, 980 (7th Cir. 2008) (denial of a tuition reimbursement to which the employee was entitled was an adverse employment action). Because Mr. Seto is similarly situated, outside of Mr. Hayes's protected class, and appears to have received relocation benefits, Mr. Hayes has presented a prima facie case that the Postal Service's failure to award him relocation benefits is employment discrimination.

The Postal Service asserts that its legitimate, non-discriminatory reason for its actions was "the AMC/ISC realignment and relocation of the military mail." This is an explanation of why the Postal Service reassigned Mr. Hayes, but does not explain why Mr. Hayes did not receive relocation benefits when the Postal Service reassigned him to Salinas. Consequently, the Postal Service's proffered explanation of its actions is not responsive to Mr. Hayes's claims and does not rebut Mr. Hayes's prima facie case. *See St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 506-07 (1993).

### D. Mr. Hayes's desired remedies

Mr. Hayes seeks to "be made whole, be reassigned to the Los Angeles District as an electronic technician and pray the Court for exemplary damages as the Court sees just and proper." SAC at 6 (Demand for Relief). However, as noted above, it is undisputed that there were no electronic technician positions available in Los Angeles at the time of the excessing and Mr. Hayes does not allege that he was denied an otherwise available Level 10 position in Los Angeles

10

1   as a result of discrimination or otherwise.  As a consequence, even if Mr. Hayes prevails at trial,
2   the Court cannot "reassign" him to an electronic technician position in Los Angeles.

## CONCLUSION

For the reasons set forth above, the Postal Service's motion for summary judgment is GRANTED IN PART and DENIED IN PART.  The Postal Service's motion is DENIED with respect to Hayes's claim that he was denied relocation benefits, and GRANTED with respect to Mr. Hayes's remaining allegations as outlined in this Order.

The parties are directed to contact the Court's ADR program at (415) 522-2199 within seven days to schedule a phone conference to determine whether this case should be referred to mediation or to a settlement conference.  The mediation or settlement conference shall be conducted on or before March 7, 2014.  A Case Management Conference is set for March 18, 2014 at 2:00 p.m.

**IT IS SO ORDERED**.

Dated: December 6, 2013

WILLIAM H. ORRICK
United States District Judge

11